# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HILL, Minors.

UNPUBLISHED
August 11, 2016

No. 330764
Alger Circuit Court
Family Division
LC No. 2013-004455-NA

Before: SERVITTO, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Respondent appeals by right from the order terminating his parental rights to his minor children, JH and AH. We affirm.

JH and AH were initially removed from the home of respondent and the children's mother in May 2013 based on allegations that the parents were incarcerated and had a lengthy history of criminal behavior and drug abuse. In June 2013, the Sault Ste. Marie Tribe of Chippewa Indians filed a petition to intervene, alleging that the children were members of the tribe. The motion was granted. Both respondent and the children's mother admitted to the allegations in the petition at a hearing in August 2013, at which they both appeared via telephone from their respective prisons. The trial court assumed jurisdiction over JH and AH.

Respondent participated in a number of services while he was incarcerated, including an employment readiness program, a money smart program, and a violence prevention program. Respondent also completed a parenting handbook that was sent to him by Stacy King, who would later supervise respondent's parenting time with the children. Respondent also obtained his GED and had contact with his children through letters and phone calls. During his time in prison, respondent participated in all of the periodic review hearings via telephone.

Respondent began parenting time shortly after his release from incarceration in December 2014, and by all accounts displayed good parenting skills and was appropriate during parenting time. King testified that JH and AH were affectionate with respondent, were excited to see him, and often did not want visits to end. Respondent was also offered a variety of services, including substance abuse counseling and a family continuity program. Respondent attended 6 of 9 sessions with his substance abuse counselor. He explained he missed 3 sessions because he forgot they were scheduled. Respondent did not engage with the family continuity program. Tribal caseworker Christina Menard testified that respondent told her he did not think that he needed it. Respondent testified that he was too busy with work and other services to be involved

-1-

with the family continuity program. Respondent's drug screens only tested positive for substances for which he had a prescription.

Respondent was arrested on March 5, 2015, for violating his parole by having unauthorized contact with the children's mother, and again on April 30, 2015, for being out past his curfew. Menard testified that when respondent was restrained for violating his curfew he was found to be in possession of morphine for which he did not have a prescription. Respondent acknowledged that at the time he was placing his desire to get high above all else. Respondent was sentenced to a jail term of 1 year. Respondent testified that he wanted to engage in substance abuse treatment and programs while incarcerated but could not get into them. Respondent continued to have contact with his children through phone calls and letters. Respondent was in a physical altercation with another inmate during this most recent incarceration.

Petitioner filed a supplemental petition requesting the termination of respondent's parental rights in October 2015. Heidi Cotey, a caseworker for the Sault Ste. Tribe of Chippewa Indians, was recognized by the court as a tribal expert. Cotey testified that the active efforts were made to avoid termination. Cotey testified that it did not appear that respondent benefitted from the services provided because he has been incarcerated all but 3 months in the last 2 and a half years. Menard testified that she believed it was in the best interests of the children to terminate respondent's parental rights. Menard stated that the biggest issue was that respondent was not able to put his kids' needs ahead of his criminal lifestyle. Menard testified that the tribal welfare committee had also recommended termination.

The trial court accepted testimony that respondent did well at parenting times, but concluded that respondent put himself in a situation where he would not be available to his children. The trial court accepted that the children were bonded to respondent, but found that he had not provided the permanence and stability that they deserve. The trial court stated that if the past were a barometer, respondent would likely reoffend. The trial court stated that by possessing morphine, respondent had signaled that the drug was more important to him than his children. The trial court stated that reasonable efforts to avoid termination were made but that they were unsuccessful. The trial court terminated respondent's parental rights.

On appeal respondent argues that the trial court erred in terminating his parental rights because neither active efforts nor reasonable efforts were made to reunify him with his children. We review an order terminating parental rights under the clearly erroneous standard. MCR 3.977(K). A trial court's decision that termination is in the best interests of the children is reviewed for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A decision of the trial court is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK Minor*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

Before termination, petitioner must show that reasonable efforts were made to "rectify the conditions that led to its involvement in the case." *In re Terry Minors*, 240 Mich App 14, 25-26; 610 NW2d 563 (2000). When dealing with an "Indian child" the state must " 'satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved

-2-

unsuccessful.' " *In re JL Minor*, 483 Mich 300, 317; 770 NW2d 853 (2009), quoting 25 USC 1912(d). The "active efforts" requirement requires affirmative rather than passive efforts and more than the " 'reasonable efforts' required under state law." *Id.* at 321.

At the time of respondent's termination hearing, Cotey testified that active efforts had been made. Cotey testified extensively about the services provided, including contact between the children and respondent while he was in prison, checking with the prison for services, obtaining services for respondent when he was out of prison such as family continuity, assisting with transportation, and providing parenting classes. Cotey testified that no services were needed that were not provided, that active efforts had been made, and that termination was appropriate. This testimony, coupled with the record of services provided, supports the conclusion that affirmative "active" efforts were made toward reunification.[1]

In support of his argument that he was not provided sufficient services or that petitioner made insufficient effort toward reunification, respondent relies on *In re Mason Minors*, 486 Mich 142; 782 NW2d 747 (2010). In *Mason Minors*, the respondent was sent to prison on a probation violation, and the petitioner and the trial court did not include him in subsequent hearings or inform him of his right to participate by telephone. *Id.* at 148. The respondent opposed termination due to "his imminent release from prison" and the assertion that he had arranged a job and housing. *Id.* at 150. The trial court terminated the respondent's parental rights because he had not personally cared for the children while in prison and because his incarceration had precluded him from taking advantage of services. *Id.* at 151.

Our Supreme Court held that the trial court was prohibited from granting termination because it and the petitioner had precluded respondent from participating in the hearings via telephone. *Id.* at 154-155. The Court further explained that "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *Id.* at 160. The Court also found that the respondent had arranged for his children to be cared for by a family member and had arranged for a job and housing for himself upon his release from prison. *Id.* at 162-164. Our Supreme Court also faulted the petitioner for not helping the respondent to seek out and obtain services while incarcerated. *Id.* at 156-160. The Court held that because the petitioner and trial court had failed to fulfill their duties to make reasonable efforts to reunite the family, the trial court's termination of respondent's parental rights should be reversed. *Id.* at 166.

Respondent argues that like the case of *In re Mason*, his parental rights were terminated solely because of his incarceration and that petitioner, and the trial court failed to give him a meaningful opportunity to avoid termination. We find *Mason* inapposite. In *Mason*, the petitioner failed "to engage respondent in the proceedings against him "by neglecting to arrange for his telephonic participation in the child protective proceedings, and "abandoned" its statutory

---

[1] After respondent's parental rights were terminated, the Sault Ste. Marie Tribe of Chippewa Indians sent a letter to the trial court stating that respondent "has been disenrolled due to improper enrollment of the family many years ago." The trial court granted the tribe's motion to withdraw its intervention in the case.

responsibility to provide in appropriate and necessary reunification services. *Id.* at 146. The trial court in *Mason* had

> effectively terminated respondent's parental rights merely because he was incarcerated during the action without considering the children's placement with relatives or properly evaluating whether placement with respondent could be appropriate for the children in the future. [*Id.*]

In contrast, respondent participated by telephone during his incarceration and with multiple services both while incarcerated and during his brief windows of freedom. The trial court terminated respondent's parental rights based on its well-supported conclusion that respondent would be unable to provide his children with stability or permanence due to his on-going drug abuse and criminality. Unlike the respondent-father in *Mason*, respondent was offered a meaningful opportunity to participate in and benefit from the case services. Respondent's reliance on *Mason* in unavailing.

Respondent also failed to participate in the family continuity program, and while he did attend 6 of 9 sessions with a substance abuse counselor, his explanation for missing the other 3 was simply that he forgot. Respondent was also allowed to attend every hearing by either telephone or video conference. Additionally, by the time of the termination hearing, the children's maternal grandmother was no longer able to take care of them, and respondent never identified another family member who could take over their care.

Given the evidence adduced below, we conclude that that petitioner made reasonable efforts to "rectify the conditions that led to its involvement in the case." *In re Terry*, 240 Mich App at 25-26. Services were provided, but respondent failed to benefit from them to a degree that additional efforts toward reunification should have been made.

We affirm.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher